# POW KEE *vs.* WILDER STEAMSHIP COMPANY.

## EXCEPTIONS.

HEARING, MARCH 22, 1893.          DECISION, MAY 3, 1893.

BICKERTON AND FREAR, JJ., AND COOPER, CIRCUIT JUDGE.

(Chief Justice Judd being disqualified by reason of being a
stockholder in defendant corporation, Circuit Judge
Cooper sat in his stead.)

In an action against a common carrier for non-delivery of goods de-
stroyed by fire, the carrier being by special contract exempted from
liability for losses by fire not due to its negligence, evidence of
changes in the general conduct of its business made by the carrier
after the fire, is inadmissible to show negligence at the time of the
fire.

The acceptance without objection of a bill of lading prepared by a ship-
per and accepted by him at the time the goods are delivered to the
carrier, is, in the absence of fraud, imposition or mistake, evidence
of the shipper's assent to a provision contained in the body of the
bill exempting the carrier from liability for losses by fire not due to
its negligence.

A consignor "prima facie" has authority to bind the consignee by
special contract exempting the carrier from liability for losses by
fire not due to its negligence.

OPINION OF THE COURT, BY FREAR, J.

This is an action on the case for non delivery of goods
shipped at Honolulu on a steamer belonging to the defen-
dant, a common carrier, to be delivered to the plaintiff at
Paia, Maui. The goods were destroyed by fire upon the
night of their arrival at Kahului, the terminus of the sea
route, while in defendant's warehouse and awaiting forward-
ing by rail to Paia the next day. The bill of lading is in
substantially the same form as that set forth in the case of

E. O. Hall & Son against the same defendant, but the trial proceeded on the theory that the exemption of the defendant from liability for losses by fire extended to inland as well as marine losses.    The case was tried at the October Term, 1892, of the Supreme Court, before Dole, J., and a jury, and resulted in a verdict for the defendant.    The defense was that the fire was accidental and that the defendant was by special contract exempted from liability for losses by fire not due to its negligence.    The plaintiff contended that the fire was due to defendant's negligence, and also that there was no special contract exempting it from its common law liability as insurer.    In order to prove defendant's negligence, the plaintiff, after showing that the warehouse was an old wooden building, that the doors of the front and rear entrances were locked on the inside, that there was no inside watchman and no notices against smoking, offered in evidence that since the fire the defendant had erected a fire-proof building in place of the one that was burned, that it had regularly forwarded the freight from Kahului to Paia on the day it was landed at Kahului, that the new warehouse contained notices against smoking, and that whenever goods were kept in it overnight a watchman was kept there.    On the question of defendant's exemption from liability by special contract, the plaintiff requested the presiding Justice to instruct the jury that "defendant's limitation of its liability could only be made by contract with the plaintiff.    The mere acceptance by a consignor of a receipt containing notice of exemption from loss by fire is not of itself evidence of such contract." The presiding Justice refused to admit the evidence or give the instruction, and the case now comes to us upon exceptions to these refusals.

The evidence was clearly inadmissable, both on principle and authority.    The ground usually assigned for the admissibility of such evidence is that the making of changes after an accident is evidence of an admission of negligence in not having made them before the accident.    But this by no means follows.    The subsequent changes may have been

made because the accident furnished an opportunity which did not exist before to make the changes, or for reasons which arose after the accident, and which were not even suggested by it, or for reasons which were disclosed by the accident but which could not by reasonable diligence have been ascertained before it, or because of a laudable desire to take extreme precautions afterwards, although all the care which the law required may have been taken at the time of and prior to the accident. In this particular case, for instance, it may not have been negligence to have continued the use of a wooden warehouse built some years ago under circumstances which made it proper to erect such a building. A person is not obliged to pull down an expensive building and erect another whenever he can erect a better one. And yet if the old one is destroyed, due care may require the erection of a new building of a very different kind on account of the changed circumstances. Negligence is failure to exercise due care under the circumstances. What amounts to negligence under one set of circumstances cannot be proved by showing what amounts to due care under another set of circumstances, much less by showing what is done under the second set of circumstances, for what is then done may be more than due care calls for. The defendant may have been entirely free from negligence both at the time of the accident and at the time of the subsequent changes, and yet very much greater precautions may have been necessary, or may have been taken even if not necessary, in the latter case than in the former, because of the different circumstances. It is not enough to say that the defendant may show in rebuttal that the circumstances remain the same, for the very fact that an accident has occurred is a change, perhaps a very important change, in the circumstances. And even if it could be shown that the circumstances remained unaltered, yet no light would have been thrown on the issue, for it would still remain to be shown what amounted to due care and no more at the time the changes were made. To allow evidence of

this kind would be in violation of the rule which forbids the introduction of issues on collateral facts which furnish no legal presumption of the principal fact, thereby tending to confuse the jury, distract their attention from the main issue, and prejudice them against the defendant.

The Kansas and Pennsylvania courts hold such evidence admissible when the subsequent changes are made soon after the accident and are such as show that they were suggested by the accident and were made to remedy the defects which caused it, but these courts also consider the evidence as almost worthless and give no satisfactory reasons for its admission at all; indeed, in the cases in which such evidence has been held admissible, the question was but little considered, the point not having been an important one in those cases. The Supreme Court of Minnesota in several of its earlier decisions also held such evidence admissible under such circumstances, but in a later case, it said, overruling its former decisions, that "on mature reflection, we have concluded that evidence of this kind ought not to be admitted under any circumstances, and that the rule heretofore adopted by this Court is on principle wrong." *Morse vs Minn. & St. L. Ry. Co.* 30 Minn. 468. In *Columbia & P. S. R. Co. vs. Hawthorne,* 144 U. S. 202, the Supreme Court of the United States, by Mr. Justice Gray, citing cases decided by the Supreme Courts of nine of the States, said: "It is now well settled, upon much consideration, by the decisions of the highest courts of most of the States in which the question has arisen, that the evidence is incompetent, because the taking of such precautions against the future is not to be construed as an admission of responsibility for the past, has no legitimate tendency to prove that the defendant has been negligent before the accident happened, and is calculated to distract the minds of the jury from the real issue, and to create a prejudice against the defendant."

The instruction also was properly refused. It raises the question whether an acceptance of a bill of lading by a shipper is evidence of his assent to its terms respecting the ex-

emption of the carrier from liability for losses not due to his negligence. Or, must an express assent be shown? There are two classes of cases which should be distinguished. One class holds that a common carrier cannot exempt himself from liability by a general notice, even though the notice is brought to the knowledge of the shipper. The other class holds that a common carrier may be exempted from liability by special contract between the parties. If a common carrier could exempt himself from liability by notice, this would always be done and the law which imposes upon him the duty of receiving goods and transporting them as insurer would be rendered nugatory. But there is no valid objection to allowing a shipper, if he so chooses, to waive his right to hold the carrier to the full obligations imposed on him by law, and by express contract to exempt him from liability from losses not due to his negligence. All of the cases cited by plaintiff's counsel belong to the first class, holding that mere notice is not sufficient. In some cases the notice was published in newspapers, in others it was posted in the carrier's offices, in others still it was printed upon the back of the bill of lading, but in no case was the exemption specified in the body of the bill of lading, as part of the contract. Where the carrier relies upon an exemption contained in a general notice it is incumbent upon him to show not only that the notice was brought to the knowledge of the shipper, but that the shipper expressly assented to it; in other words, to prove that there was something more than mere notice, that is, a contract. On the other hand, by the great weight of authority it is settled that where the exemption is inserted in the body of the bill of lading in a way not calculated to deceive, the mere acceptance of the bill by the shipper is, in the absence of fraud, imposition or mistake, evidence of his assent to its terms. The reason is that the bill of lading is a contract as well as a receipt, and a person who accepts a contract, though signed by the other party alone, is presumed to have acquainted himself with its contents and to have assented to its terms.

The case chiefly relied upon by the plaintiff is *Railroad Co. vs. Manufacturing Co.*, 16 Wall., 318, in which the Supreme Court of the United States held that the acceptance of a receipt by a consignor without dissent was not sufficient evidence of a contract to exempt the carrier from liability, the exemption clause being merely an unsigned general notice printed on the back of the receipt. But the ground of the decision was that the exemption clause was a mere notice and no part of the contract contained in the bill of lading. In a later case, *Bank of Kentucky vs. Adams Exp. Co.*, 97 U. S., 174, in which the exemption clause was inserted in the body of the bill of lading, the same court took a very different view. The circuit judge had instructed the jury in substance as follows: "If you believe that the consignor presented the bill of lading to the agent of the carrier for his signature, with the blanks filled, and at such time delivered to him the package, without disclosing its owner, but addressed to the consignee, that the bill was signed and redelivered to the consignor, and forwarded to the consignee, then the bill of lading constitutes the contract, and all the exceptions in it are part of the contract, no matter whether each or all of them were known to the consignor or not; and the consignee is bound by the contract, whether it expressly authorized the consignor to make it or not. The evidence tending to show that the bill of lading was not read at the time of signing, and that nothing was said about the exceptions contained in it, is immaterial." The Supreme Court said: "We find no error in what the circuit judge said upon the question whether the bills of lading, with the exceptions, constituted the contract between the parties. The charge in this particular is justified by very numerous authorities," citing, among others, the case of *Grace vs. Adams*, 100 Mass. 505, in which the Court said: "The terms and conditions (of the receipt) are expressed in the body of it in a way not calculated to escape attention. The acceptance of it by the plaintiff, at the time of the delivery of his package, without notice of his dissent from its terms, authorized the defendants

to infer assent by the plaintiff. It was his only voucher and evidence against the defendants. It is not claimed that he did not know, when he took it, that it was a shipping contract or bill of lading. It was his duty to read it. The law presumes, in the absence of fraud or imposition, that he did read it, or was otherwise informed of its contents, and was willing to assent to its terms without reading it."

In *Mich. R. R. Co. vs. Hale*, 6 Mich., 244, the bill of lading with the notice printed on the back, was in the same words as that in *Railroad Co. vs. Manufacturing Co., supra,* and the reasoning and conclusion of the Court were also the same. But in the later case of *McMillan vs. Mich. S. & N. I. R. R. Co.*, 16 Mich., 113, in which the exemption clause was inserted in the body of the bill of lading as part of the contract, the same Court held differently, taking the same view as was taken by the Supreme Court of the United States in the later case of *Bank of Kentucky vs. Adams Exp. Co.* cited *supra.*

It is true that some courts, more particularly the Illinois courts, hold that the carrier must show affirmatively that the shipper knew, and assented to, the terms of the receipt, but the decisions of nearly all of the courts in which the question has arisen are the other way. See, in addition to the cases above cited, *Snider vs. Adams Exp. Co.*, 63 Mo. 376; *Germania Fire Ins. Co. vs. M. & R. Co.*, 72 N. Y. 90; *Hoadley vs. Northern Trans. Co.*, 115 Mass. 304; *Mulligan vs. Ill. C. R. Co.*, 36 Ia. 181; *Lawrence vs. N. Y. P. & B. R. Co.*, 36 Conn. 63; *King vs. Woodbridge*, 34 Vt. 566; *Farnham vs. C. & A. R. Co.*, 55 Pa. St. 53; *Boorman vs. Am. Exp. Co.*, 21 Wis. 153; *Cinn. H. & D. & D. & M. R. Co. vs. P. & R.*, 19 On. St. 221. In the case at bar the acceptance of the receipt is particularly strong evidence of assent to its terms, for the reason that the receipt was prepared by the shippers and presented by them to the carrier's agent for his signature.

Plaintiff's counsel urges further that, even if the consignor may be bound by an acceptance of the receipt, yet the consignor had no authority to bind the consignee by a special contract of this nature. But the case of *Bank of Kentucky*

vs. *Adams Exp. Co.*, *supra*, decides otherwise, and, we think, with good reason.

The exceptions are overruled.

*A. S. Hartwell*, for plaintiff.

*F. M. Hatch*, for defendant.